UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DANIEL DELGADO,

        Plaintiff,

    v.

MARK TARABOCHIA, *et al.*,

        Defendants.

NO. C17-1822RSL

ORDER GRANTING IN PART PLAINTIFF'S MOTION TO QUASH SUBPOENAS

This matter comes before the Court on "Plaintiff's Motion to Quash Subpoenas Issued by Defendants." Dkt. # 15. Plaintiff injured his hand while on board the F/V JOYCE MARIE and has sued the vessel and vessel owner(s) for Jones Act negligence and unseaworthiness. Plaintiff alleges that he lost his balance and his hand went through a plate glass window on the wheelhouse, causing severe injuries with continuing disabilities. Defendants doubt plaintiff's version of events based on evidence acquired to date. Another crew member on board the F/V JOYCE MARIE at the time of the incident has indicated that plaintiff was using heroin in the days leading up to the incident and was in the midst of a heated argument with his girlfriend when he punched through the window. After plaintiff left the vessel, defendants located a computer file, apparently created by plaintiff, containing text messages, emails, and photographs dated October 2013 to July 2014 that seem to reflect drug transactions and a volatile

ORDER GRANTING IN PART PLAINTIFF'S
MOTION TO QUASH SUBPOENAS

relationship. At his deposition, plaintiff denied using heroin after 2011, denied fighting with his girlfriend before the incident, and denied punching through the wheelhouse window.

Plaintiff reports that he has no feeling in three of his fingers and his thumb, that he has no coordination or grip strength in his right (dominant) hand, and that he is in constant, severe pain. Defendants have obtained surveillance video which seemingly contradicts plaintiff's testimony regarding the extent and severity of his deficits.

Defendants issued three subpoenas for phone records from January 2014 to the present, including all account information, call and text message logs,[1] and roaming data. They have also issued two subpoenas for bank records for the same period, seeking detailed summaries of credit and debit card transactions, withdrawals, and deposits. Plaintiff seeks to quash all five subpoenas as irrelevant and an unwarranted burden on his privacy interests.

Having reviewed the memoranda, declaration, and exhibits submitted by the parties, the Court finds as follows:

Litigants in a civil action are entitled to discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In determining what is "relevant" and "proportional," the district court must consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Id. "The court must limit discovery that is not proportional to the needs of the case." Hancock v. Aetna Life Ins. Co., 321 F.R.D. 383, 390 (W.D. Wash. 2017).

---

[1] Defendants revised the subpoenas to explicitly exclude the actual text of text messages to avoid any chance of obtaining privileged communications between plaintiff and his attorney and/or any conflict with the requirements of the Storage Communications Act, 18 U.S.C. § 2702(a)(1).

ORDER GRANTING IN PART PLAINTIFF'S
MOTION TO QUASH SUBPOENAS            -2-

Additionally, courts may limit unreasonably cumulative, overly broad, unduly burdensome, or irrelevant discovery. Fed. R. Civ. P. 26(b)(2)(c).

In their opposition, defendants rely on an outdated standard in support of their relevance argument. Dkt. # 19 at 5. Rule 26(b)(1) now states "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Notably, the 2015 Amendments to Rule 26 deleted the provision for discovery of relevant but inadmissible information that appears "reasonably calculated to lead to the discovery of admissible evidence." The Committee Notes indicate that the phrase had been incorrectly used to define the scope of discovery, sometimes to the exclusion of concepts of proportionality.

> As the Committee Note to the 2000 amendments observed, use of the "reasonably calculated" phrase to define the scope of discovery "might swallow any other limitation on the scope of discovery." The 2000 amendments sought to prevent such misuse by adding the word "Relevant" at the beginning of the sentence, making clear that " 'relevant' means within the scope of discovery as defined in this subdivision ..." The "reasonably calculated" phrase has continued to create problems, however, and is removed by these amendments.

Fed. R. Civ. P. 26, Committee Note to the 2015 Amendment.

The question of whether the third-party information defendants seek is discoverable depends on a balancing of defendants' need to obtain all relevant evidence with plaintiff's need for protection from far-reaching, burdensome, and invasive discovery. "[C]ourts are properly encouraged to weigh the expected benefits and burdens posed by particular discovery requests (electronic and otherwise) to ensure that the collateral discovery disputes do not displace trial on the merits as the primary focus of the parties' attention." Regan–Touhy v. Walgreen Co., 526 F.3d 641, 648–49 (10th Cir. 2008) (citations omitted).

With regards to the pre-incident phone records, defendants have identified a specific need to confirm events and authenticate communications that are directly relevant to a determination

ORDER GRANTING IN PART PLAINTIFF'S
MOTION TO QUASH SUBPOENAS            -3-

of whether defendants' negligence and/or the vessel's unseaworthiness caused plaintiff's injuries. To the extent these records mirror the electronic files found on the vessel's computer and corroborate the other crewman's statements, they are of vital importance to defendants' theory of the case. While much will be disclosed that has nothing to do with this case, plaintiff's privacy interests do not outweigh the need to obtain relevant information regarding the cause of plaintiff's injuries in this case where plaintiff says he is entitled to damages of $3,000,000.

With regards to the pre-incident bank records, defendants offer no reason to suspect that these records will authenticate or corroborate the electronic files plaintiff left behind. Production of plaintiff's pre-incident finances, including every purchase and every deposit, is unlikely to result in admissible evidence (there is no reason to suspect that plaintiff used a credit card to purchase heroin or that defendants would be able to identify such transactions from a list of charges or withdrawals). Because of its minimal relevance and the outsized burdens it would impose on plaintiff's privacy interests, discovery of the pre-incident bank records is not proportional to the needs of the case.[2]

With regards to the post-incident phone and bank records, defendants are fishing. Defendants have evidence that plaintiff recently engaged in activities that he arguably should not be able to do if his testimony regarding the extent of his injuries were truthful. While focused discovery regarding plaintiff's post-injury activities may be fruitful, the discovery sought here -- records of all communications and bank records from the accident to the present -- reflects nothing more than defendants' hope that they will catch plaintiff calling a bowling alley, paying

---

[2] In a footnote, defendants argue that plaintiff's pre-incident bank records will provide information regarding his pre-injury earnings. Dkt. # 19 at 7 n.7. Defendants presumably paid plaintiff for his work on the F/V JOYCE MARIE and are aware of those amounts. If plaintiff had other forms of income pre-injury, it would benefit him to disclose them in comparison to his current earnings. Defendants have not shown why an invasive review of plaintiff's finances is proportional to the needs of this case.

ORDER GRANTING IN PART PLAINTIFF'S
MOTION TO QUASH SUBPOENAS    -4-

for a round of golf, or doing something else defendants feel he should not be able to do. The balance of the benefits and burdens of these post-incident discovery requests are not in defendants' favor: they are not prompted by any specific need for information and are likely to drive discovery and generate disputes that are wholly collateral to the primary issues in this case.

For all of the foregoing reasons, plaintiff's motion to quash is GRANTED in part. The subpoenas to the banks are QUASHED, as are the subpoenas issued to the wireless providers to the extent they seek post-incident records. Any responsive records produced by the wireless providers related to the period January 1, 2014 through June 16, 2015 shall be used only for purposes of this litigation

Dated this 4th day of May, 2018.

Robert S. Lasnik
United States District Judge